STATE v. JACK GUTHRIE, JACK DAVIS AND EUGENE THOMAS.

(Filed 24 November, 1965.)

**1. Conspiracy §§ 3, 4—**

Conspiracy to commit an unlawful act and the commission of the unlawful act are separate offenses, and under an indictment charging unlawful conspiracy and the commission of the unlawful act pursuant to the conspiracy a defendant may be convicted of the substantive offense, even though the jury finds him not guilty of conspiracy, and the words "in furtherance of the unlawful conspiracy" in the charge of the substantive offense will be treated as surplusage.

**2. Conspiracy § 3—**

A conspiracy is an agreement by two or more persons to do an unlawful act, or to do a lawful act in an unlawful way or by unlawful means, and it is not necessary that the agreement be accomplished, the agreement itself being the offense.

**3. Conspiracy § 5—**

Acts and declarations of co-conspirators in furtherance of the common design are admissible against all co-conspirators.

**4. Schools § 15; Criminal Law § 65— Evidence of identity of defendant as one of crowd disturbing school and defacing property held for jury.**

Evidence tending to show that numerous persons who were opposed to the consolidation of the high schools in question came upon the grounds of one of the schools, that one of them broke open the transom and entered a locked schoolroom while class was in session, unlocked the door, that members of the crowd removed the teacher bodily from the building, together with testimony of the teacher in pointing out one of defendants, that he thought that defendant was one of the crowd who carried him out, *held* sufficient to be submitted to the jury· in a prosecution of such defendant under G.S. 14-273, but as to the other defendants, nonsuit should have been entered for want of evidence identifying them as members of the crowd.

APPEAL by defendants from *McLean, J.,* May Criminal Session 1965 of MADISON.

Defendants Jack Guthrie, Jack Davis and Eugene Thomas were tried upon a bill of indictment charging in the first count that Paul Ballard, Jack Guthrie, Eugene Thomas, Joe Fowler, Jack Davis, Herbert Baker and Jeter Roberts "did unlawfully, wilfully, and feloniously agree, plan, combine, conspire and confederate, each with the other, to unlawfully, wilfully and feloniously interrupt and disturb the public school at Walnut, North Carolina, within and without the Walnut School building where said school was being held on the 22nd day of August, 1962 * * *." The second count of the bill of indictment charged that the above-named defendants "did unlawfully, wilfully interrupt and disturb the public school at Walnut, North Carolina, by assaulting teachers and lunch room personnel and defacing and damaging Walnut School property, all in furtherance of the unlawful conspiracy aforesaid * * *."

The State was permitted to proceed to trial against these defendants and Jeter Roberts on the above bill of indictment, and to continue the case against Joe Fowler and Herbert Baker, according to the record. The record is silent as to what disposition, if any, was made of the case against Paul Ballard.

During the trial and before defendants had an opportunity to offer evidence, Jeter Roberts became ill and a mistrial was ordered and the case continued as to him.

The State's evidence tends to show that action had been taken by the Madison County Board of Education to consolidate Walnut High School with the Marshall High School and to transfer all the seventh and eighth grade students at Marshall to the Walnut School.

Many people in the Walnut school district strenuously objected to the consolidation of the two high schools. Two public meetings were held to protest the consolidation, one on 14 August 1962 and another on Tuesday night, 21 August 1962. At the first meeting approximately $600.00 was subscribed for the purpose of employing counsel to oppose the consolidation. At the second meeting, consisting of between one to three hundred persons, ways and means were discussed to defeat the consolidation. These defendants were present at this meeting. Roy Ramsey attended the second meeting and testified for the State that Joe Fowler "told them how they would fight consolidation. He said we'll bring the kids in here, let they stay at Walnut, where they belong; we won't let them go to Marshall; we'll bring them to the Walnut School for ten days and at the end of ten days we'll see what happens. He (Fowler) was referring to all the high

school children that had normally been going to Walnut High School."

On the morning of 22 August 1962, the first day of the 1962-1963 school year at Walnut School, defendants Guthrie, Davis and Thomas, and approximately 100 to 150 "outsiders," were present at or about the Walnut School. Auburn Wyatt, principal of the Walnut School, testified for the State that, "* * * (T)here was just a lot of people inside the building milling around, a lot of people on the outside milling around * * * some of them were * * * high school students * * * some of them were adults."

Floyd Wallin, a school bus driver on 22 August 1962, stopped his school bus on the road in front of the Walnut School to allow his passengers to alight therefrom. Joe Fowler, Herbert Baker and defendant Thomas got on the bus. Wallin testified that Thomas "told me to take it (the bus) out to the church * * * and park it, (that) I wasn't taking no children on to Marshall to school and for me to surrender the keys to them, (that) they didn't want no trouble. * * * I gave Eugene Thomas the keys." Wallin recovered his keys from the school principal's office in time to carry the students home.

Leroy Gosnell, a school bus driver on 22 August 1962, testified for the State that he saw defendants Thomas and Guthrie inside the Walnut School and heard defendant Thomas remark "something in the manner of let's go down the hall and get the teachers, but I believe he said Mr. Deaton, the teacher Deaton, some way like that, anyway Deaton's name was mentioned * * *."

U. B. Deaton, a teacher at the Walnut School on 22 August 1962, testified for the State that while he was in his classroom, with the door locked and some of his pupils present, "a crowd * * * in the hall, of men and boys * * * hoisted someone on their shoulder and knocked * * * the transom loose, and came down inside the room and opened the door from the inside. * * * (T)here was a crowd of men and boys in the hall, they rushed into the room making mild threats. * * * (T)hey forcibly removed me from the classroom * * * through the hall, down the stairway and ordered me not to return to the building. * * * Six to eight men picked me up and carried me from the classroom. I did not know any of those men at that time. I have since learned who some of them were. * * * I can't remember their names, maybe faces." When inquiry was made as to whether he saw any of the men who helped carry him out of his classroom sitting with defense counsel, the witness indicated he recognized one wearing a striped shirt, sitting at the end of the table. Defendant Thomas was requested to stand. Thomas stood up. The

witness was then asked the question, "Is that the one you referred to, Mr. Deaton?" The witness answered, "I think it was, yes." Then on cross examination, Mr. Deaton stated, "Yes, sir, I believe he (Thomas) was one of them."

The jury found defendants not guilty on the first count but guilty on the second count. Each defendant was sentenced to seven months in the common jail of Madison County, to be assigned to work under the supervision of the Prison Department, as provided by law. From the judgments imposed, defendants appeal, assigning error.

*Attorney General Bruton, Deputy Attorney General Ralph Moody, Staff Attorney Andrew A. Vanore, Jr., for the State.*
*Mashburn & Huff for defendants.*

DENNY, C.J. We shall not undertake a *seriatim* discussion of the 225 assignments of error based on the more than 500 exceptions set out in the record.

The first assignment of error is to the refusal of the court below to quash the second count in the bill of indictment, to wit, that the defendants "did unlawfully, wilfully interrupt and disturb the public school at Walnut, North Carolina, by assaulting teachers and lunch room personnel and defacing and damaging Walnut School property, all in furtherance of the unlawful conspiracy aforesaid, * * *" charging a violation of G.S. 14-273, which reads in pertinent part as follows:

> "If any person shall wilfully interrupt or disturb any public or private school * * *, within or without the place where such * * * school is held, or injure any school building, or deface any school furniture, apparatus or other school property, * * * he shall be guilty of a misdemeanor, and shall, upon conviction, be fined or imprisoned or both in the discretion of the court."

The defendants contend that since the substantive charge set out in the second count in the bill of indictment is followed by the words, "all in furtherance of the unlawful conspiracy aforesaid," the defendants having been acquitted on the conspiracy count, they cannot be convicted of the substantive charge contained in the second count. This identical contention was raised in *S. v. McCullough*, 244 N.C. 11, 92 S.E. 2d 389, and we held: "The fact that the second count states that the substantive offense was committed pursuant to the conspiracy, will be treated as surplusage." This assignment of error is overruled.

Defendants also assign as error the refusal of the court below to sustain their motion for judgment as of nonsuit as to the second count in the bill of indictment, made at the close of the State's evidence and renewed at the close of all the evidence.

A conspiracy is an agreement by two or more persons to do an unlawful act, or to do a lawful act in an unlawful way or by unlawful means, and it is not necessary that the agreement be accomplished, the agreement itself being the offense. *S. v. Potter,* 252 N.C. 312, 113 S.E. 2d 573; *S. v. Hedrick,* 236 N.C. 727, 73 S.E. 2d 904; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *S. v. Whiteside,* 204 N.C. 710, 169 S.E. 711. Acts and declarations of co-conspirators in furtherance of the common design are admissible against all conspirators. *S. v. Kirkman,* 252 N.C. 781, 114 S.E. 2d 633.

While there was voluminous evidence in the trial below tending to show the existence of a conspiracy to obstruct and prevent the execution of the order of the Madison County Board of Education, consolidating the Walnut High School with the Marshall High School and the transfer of the seventh and eighth grade students from the Marshall School to the Walnut School, the jury did not so find and acquitted the defendants on the conspiracy count. Therefore, it is necessary, in order to sustain a conviction of the defendants on the second count, for the State to show beyond a reasonable doubt that each defendant violated the statute, G.S. 14-273, as charged in the second count.

There is evidence tending to show that defendant Thomas and other unidentified persons, on 22 August 1962, forcibly removed U. B. Deaton, a teacher at Walnut School, from his classroom and from the school building, and ordered him not to return thereto. On the other hand, there is no evidence tending to show that Jack Guthrie or Jack Davis assaulted any teacher or lunch room employee, or that they or either of them interferred with any teacher or lunch room employee in any manner whatsoever; neither is there any evidence tending to show that they or either of them defaced and damaged any of the Walnut School property.

We have carefully studied the evidence against these defendants and, in our opinion, the evidence adduced in the trial below was insufficient to carry the case to the jury on the second count against Jack Guthrie and Jack Davis, and the motion for judgment as of nonsuit on the second count, as to them, should have been allowed. However, as to defendant Eugene Thomas, in our opinion the evidence was sufficient to require its submission to the jury on the second count, and we so hold; therefore, the motion for judgment as of nonsuit, as to him, was properly overruled.

The defendants assign as error numerous portions of the court's charge to the jury on the second count in the bill of indictment. A careful examination of these assignments fails to show any prejudicial error, and they are overruled.

Consequently, the verdict and judgments against Jack Guthrie and Jack Davis are reversed, and the verdict and judgment against Eugene Thomas will be upheld.

As to defendants Guthrie and Davis —

Reversed.

As to defendant Thomas —

No error.